# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

SANDRA A. HEIMER,

        Plaintiff,

vs.

OSAGE COMMUNITY SCHOOL
DISTRICT,

        Defendant.

No. C04-2014

**ORDER**

_____

This matter comes before the court pursuant to Defendant Osage Community School District's July 5, 2005 motion for new trial, motion for judgment as a matter of law, and motion to amend the judgment (docket number 43). The defendant's motion is denied in part and granted in part as set forth below.

## I. INTRODUCTION

The plaintiff in this case, Sandra Heimer, was an employee of the Osage Community School District, employed as both a cook and as a summertime fill-in custodian. Ms. Heimer applied for the position of custodian with Defendant Osage Community School District in March of 2003, and was denied the position. Ms. Heimer filed a lawsuit in this court claiming that she was denied the position of custodian based on her gender, in violation of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e), (Title VII). A jury trial was held on June 20-22, 2005. At the close of the plaintiff's case, Defendant Osage Community School District moved for judgment as a matter of law with regard to Ms. Heimer's Title VII discrimination claim. This court denied the defendant's motion for judgment as a matter of law. The jury found that the plaintiff's gender was a

motivating factor in the decision not to hire her for the school custodian position and that the school would have hired the plaintiff in the absence of gender discrimination. The jury awarded the plaintiff $30,000.00 in back pay and $300,000.00 in emotional distress damages.

Post-trial motions were filed both by the plaintiff and the defendant in this case. Specifically, the defendant has moved for judgment as a matter of law, or alternatively, a new trial on the plaintiff's gender discrimination claim (docket number 43). The defendant has also moved for judgment as a matter of law, or alternatively, a new trial on the jury's award of emotional distress damages, or alternatively, for remittitur and amendment of the judgment (docket number 43).

By virtue of the jury's finding that the defendant violated Title VII when it refused to hire the plaintiff for the position of custodian, the plaintiff has moved this court to award attorney fees and costs as well as pre and post judgment interest, and for front pay (docket numbers 45, 46, and 56 respectively).[1]

## II. CONCLUSIONS OF LAW

### A. Motion for Judgment as a Matter of Law

"Judgment as a matter of law may be granted when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party.'" Sip-Top, Inc. v. Ecko Group, Inc., 86 F.3d 827, 830 (8th Cir. 1996) (quoting Fed. R. Civ. P. 50(a)(1)). In evaluating a motion for a judgment as a matter of law, the court must view the evidence in a light most favorable to the party that prevailed with the jury. Vetter v. Farmland Indust., Inc., 120 F.3d 749, 752 (8th Cir. 1997). Also, in considering a motion for judgment as a matter of law, a court must:

---

[1] The court considers the plaintiff's motion for attorney fees and costs and motion for front pay in a separately filed Order.

> (1) resolve direct factual conflicts in favor of the nonmovant,
> (2) assume as true all facts supporting the nonmovant which
> the evidence tended to prove, (3) give the nonmovant the
> benefit of all reasonable inferences, and (4) deny the motion if
> the evidence so viewed would allow reasonable jurors to differ
> as to the conclusions that could be drawn.

Sip-Top, Inc., 86 F.3d at 830, quoting Jones v. Edwards, 770 F.2d 739, 740 (8th Cir. 1985). "A jury verdict is to be overturned '[o]nly when there is a complete absence of probative facts to support the conclusion reached.'" Vetter, 120 F.3d at 752, quoting Ryther v. KARE 11, 108 F.3d 832, 845 (8th Cir. 1997), cert denied, 117 S.Ct. 2510 (1977). However, the nonmoving party is not entitled to the benefit of unreasonable inferences or those "at war with the undisputed facts." Sip-Top, Inc., 86 F.3d at 830, quoting Schneider v. Chrysler Motors Corp., 401 F.2d 549, 555 (8th Cir. 1968). "A reasonable inference is one 'which may be drawn from the evidence without resort to speculation.'" Id., quoting Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir. 1979).

Judgment as a matter of law is appropriate when the record is void of any proof beyond speculation to support the verdict. Id.; see also Kinserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000) (citing Fought v. Hayes Wheels Int'l, Inc., 101 F.3d 1275, 1277 (8th Cir. 1996) ("When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate.") "In ruling upon a motion for judgment as a matter of law, the court does not weigh or evaluate the evidence nor does it consider the credibility of the witnesses." Rasmussen v. Quaker Chemical Corp., 993 F. Supp. 677, 681 (N.D. Iowa 1998) (citing Stobner v. Lingenfelter, 115 F.3d 576, 578 (8th Cir. 1997).

## 1. Facts Taken in a Light Most Favorable to the Plaintiff

The plaintiff presented a very compelling case. She worked at Osage Community School as a cook for many years. During many summers, she worked as a custodian. While there were factual disputes concerning the duties of a full time custodian during the

school year, the job predominately involved cleaning the school. The plaintiff did a satisfactory job. By all accounts, the plaintiff is an incredibly meticulous cleaner. When the plaintiff applied for the position of full time custodian, she asked the head custodian, Tracy Mullenbach, whom she had worked with successfully for some time during the summers, to serve as a reference. Specifically, the plaintiff called Mr. Mullenbach at his home on a Sunday night to ask if he would be willing to put in a good word for her concerning the full time custodian position. Mr. Mullenbach responded that he would not put in a good word for the plaintiff because he would rather have a man in the position.

The plaintiff was chosen for an interview and interviewed for the custodian position with Mr. Mullenbach, Superintendent Williams, and Principal Nicholson. Superintendent Williams and Principal Nicholson noticed the tension between the plaintiff and Mr. Mullenbach, but did not know the source of the tension. The interview went poorly for the plaintiff and she was not offered the job despite the fact that she had performed the job for approximately ten years during the summers. Superintendent Williams and Principal Nicholson did not think that the plaintiff and Mr. Mullenbach could work well together based on the tension that was exhibited during the interview. The jury could reasonably believe that the tension was a result of Mr. Mullenbach's sexism, as exhibited by his comment to the plaintiff that he would rather have a man for the job. His comment is strong evidence that the plaintiff's gender motivated his decision as to who to recommend following the interviews. That decision was then ratified by Superintendent Williams and Principal Nicholson, albeit unwittingly. While it is true that the school board also had to agree with the choice of candidate, it was clear from the evidence presented that the school board would likely approve and defer to any decision made by Superintendent Williams. Harvey Parcel was hired for the position of full time custodian.

At trial, the defendant chose to contest the plaintiff's qualifications for the position of full time custodian, including her ability or inability to get along well with others in a

work environment. The defendant put on evidence that the plaintiff was too meticulous when cleaning the school kitchen, that she ordered too few wiener winks on occasion, and had some petty arguments with subordinates. It was a "high wire act" that seemed to backfire. Based on the jury's verdict and award, it is clear that this defense was rejected.

## 2. The Parties' Arguments

The defendant renews its motion for judgment as a matter of law. Specifically, the defendant asserts that the court should have, upon the defendant's motion at trial, directed a verdict in the defendant's favor on the plaintiff's gender discrimination claim because the evidence submitted during trial "was insufficient to permit the jury to find the ultimate fact of gender discrimination." Specifically, the defendant asserts that the motion for directed verdict should have been granted because the plaintiff's "gender discrimination [claim] relied totally on a stray remark made by a non-decision maker, [Mr. Mullenbach] outside of the decision-making process, and in a non-work telephone call from [the plaintiff's] home to [Mr. Mullenbach's] home on a Sunday afternoon." The defendant explains that "[t]his stray remark cannot be direct evidence of any discriminatory animus by the district, because there was no specific link between the challenged employment action and the alleged animus."[2] The defendant further argues that while the plaintiff's theory is that Mr. Mullenbach's discriminatory attitude infected the hiring process, it was the plaintiff who actually "injected attitude" into the hiring process, when she questioned Mr. Mullenbach concerning his opinion as to her qualifications during her interview for the custodial position.[3] The defendant argues that the issue in this case is the plaintiff's qualifications

---

[2] The defendant cites to <u>Kelly v. Sinclair-GMC Truck, Inc.</u>, 210 F.3d 827, 835 (8th Cir. 2000).

[3] During oral argument, counsel for the defendant noted that based on the plaintiff's behavior toward Mr. Mullenbach during the interview, Superintendent Williams questioned

(continued…)

for the custodian position, and not her gender. The defendant urges that Mr. Mullenbach's stray discriminatory comment and any personal animosity between the plaintiff and Mr. Mullenbach does cannot equate to gender discrimination, because Superintendent Williams and the school board were the final decision makers in the hiring process and were unaware of the discriminatory comment. Accordingly, the defendant argues, the plaintiff's case rested on nothing more than a tenuous chain, beginning with Mr. Mullenbach's remark, which never reached the ultimate decision makers in the hiring process. The defendant asserts that Superintendent Williams and the school board made the best business judgment in determining that Harvey Parcel was a better qualified candidate than the plaintiff for the position of custodian. The defendant concludes that, "even viewing the evidence in the light most favorable to the jury verdict, there is a complete lack of probative facts to support this gender discrimination verdict, which absence requires this [c]ourt to enter judgment in favor of [the defendant] as a matter of law."[4]

The plaintiff resists the defendant's motion for judgment as a matter of law. First, the plaintiff argues that "[b]oth direct and circumstantial evidence of discrimination were prominent throughout the record." Specifically, the plaintiff points to evidence that the Mr. Mullenbach, who was the head custodian during the relevant time period, was one member of "a three person panel that reviewed applications for the [custodian] job and interviewed applicants," and "stated openly to the [p]laintiff that he 'would rather have a man for the job.'" The plaintiff further points out that both of the other men on the custodian-selection panel, Superintendent Williams and Principal Nicholson, testified under oath that they "gave credence" to Mr. Mullenbach's opinion "with respect to the decision

---

[3](...continued)
her "people skills."

[4] The defendant cites to <u>MacGregor v. Mallinckrodt, Inc.</u>, 373 F.3d 923, 928 (8th Cir. 2004); <u>Ogden v. Wax Works, Inc.</u>, 214 F.3d 999, 1005 (8th Cir. 1999).

of who would ultimately be hired," and that both men testified that "the obvious tension between [the plaintiff] and [Mr. Mullenbach], exhibited during the interview, was a factor in the decision not to hire the [p]laintiff for the position" of custodian. Accordingly, the plaintiff argues that "a reasonable juror could infer" from the above testimony as well as other testimony and evidence submitted at trial, that Mr. Mullenbach "preferred a man for the job and, had a hand in hiring a man because of his gender, over the [plaintiff], despite the fact that [the plaintiff] was very experienced with custodial work within the school," and that, accordingly, "discrimination because of gender was a motivating factor in the hiring decision."[5]

The plaintiff further argues that her gender discrimination claim "relied not only on the remark made by [Tracy Mullenbach] to the [p]laintiff[,] but also on the prejudicial effect of the discriminatory remark and its aftermath." Specifically, the plaintiff asserts that Mr. Mullenbach's discriminatory remark, that he would rather hire a man for the position of custodian, "provided the causal link that created the tension between [Mr. Mullenbach] and the plaintiff during the interview process," and ultimately affected Superintendent Williams' decision not to hire the plaintiff. The plaintiff also argues that Mr. Mullenbach's remark was not in fact a "stray remark" as the remark was made by a person who was very clearly involved in the decision making process, and the remark "was made in the context of the [p]laintiff requesting a recommendation from [Tracy Mullenbach]."[6] Rather, the plaintiff contends that Mr. Mullenbach's remark constituted

---

[5] The plaintiff cites to Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1064 (8th Cir. 1988).

[6] The plaintiff cites to Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 922 (8th Cir. 2000); Bauer v. Metz Baking Co., 59 F. Supp. 2d 896, 902 (N.D. Iowa 1999); Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1018 (8th Cir. 1999).

"direct evidence of discriminatory animus made by a person in the decision making process." The plaintiff further argues that "evidence of discriminatory animus by the District came by way of the testimony illustrating the district's utter disregard for the anti-discriminatory laws of this country and, the district's failure to disseminate information designed to curb discrimination" in the workplace.[7]

Finally, the plaintiff asserts that the jury fairly considered all of the defendant's evidence in support of the argument that Superintendent Williams and the school board had made a subjective personnel decision based on the plaintiff's alleged work-related shortcomings and the superior qualifications of the candidate ultimately hired, and the jury determined that the defendant's rationale in this regard was pretext.

### 3. The Court's Analysis

The defendant's motion for judgment as a matter of law is denied. It cannot be said that the record in this case is "void of any proof beyond speculation to support" the jury's verdict finding gender discrimination, or that there was no legally sufficient evidentiary basis for the jury's finding. Sip-Top, Inc., 86 F.3d at 830. The court addresses each of the defendant's arguments in turn.

First, the defendant's argument that the plaintiff's case rested on nothing more than a "stray remark" made by a "non-decision maker," with no "specific link" between the refusal to hire the plaintiff and the discriminatory comment, misses the mark. The testimony in this case clearly established that Superintendent Williams, Mr. Nicholson, and Mr. Mullenbach, the person who admittedly made the discriminatory comment to the plaintiff, were responsible for choosing interviewees, interviewing the candidates, and narrowing down the candidates to two top choices. As the plaintiff points out, Superintendent Williams testified that he considered Mr. Mullenbach's opinion concerning

---

[7] The plaintiff cites to Baker v. John Morrell & Co., 266 F. Supp. 2d 909, 959 (N.D. Iowa 2003).

8

the custodial position candidates throughout the interview and selection process. Further, Superintendent Williams testified that at least part of the reason that the plaintiff was not hired for the custodial position was because it appeared that she had difficulty getting along with Mr. Mullenbach.[8] Based on this and other evidence presented at trial, the jury could have reasonably inferred that Mr. Mullenbach's discriminatory comment infected the hiring process in that (1) Mr. Mullenbach's discriminatory comment may have been the predominant source of tension between the plaintiff and Tracy Mullenbach, which tension was apparent at the plaintiff's interview for the custodian position and which tension affected the decision not to hire the plaintiff; and (2) Mr. Mullenbach, the person who made the discriminatory comment, was directly involved in the decision making process as he was one of only three people who determined which custodial position candidates should be interviewed, he participated in the interviewing process, and he made recommendations to Superintendent Williams, along with Mr. Nicholson, concerning the top two candidates for the custodian position.

Second, the defendant's argument that Mr. Mullenbach's discriminatory remark was a "stray" comment unrelated to the decision making process, was rejected by the court in connection with the defendant's proposed jury instruction concerning this issue and in denying the defendant's first motion for judgment as a matter of law, and the court here again finds the argument to be unpersuasive. While it is true that Mr. Mullenbach's comment was made during a phone call initiated by the plaintiff to Mr. Mullenbach at his home during non-work hours, the phone call concerned the very custodian position at

_____

[8] Specifically, Superintendent Nicholson testified, in relevant part, as follows:

> [The plaintiff] came in and . . . wanted to talk about why she didn't get the job, and I explained to her that the situation with Tracy [Mullenbach], I didn't think they could work together and I also told her that Harvey [Parcel] was better qualified.

issue, and Mr. Mullenbach's participation or influence in the selection process for that custodial position. The plaintiff was not contacting Mr. Mullenbach for personal reasons, she was contacting him to inquire as to whether he would support her in her efforts to be hired as custodian. Mr. Mullenbach did not simply tell the plaintiff that he would or could not support her, he also told her that he preferred that a man have the job. It was a comment by a decision maker about the hiring decision. Considered in this context, the comment simply does not qualify as a stray remark made outside of the decision making process. It was highly indicative of Mr. Mullenbach's intent and motivation.

Finally, the court is unpersuaded by the defendant's argument that the plaintiff herself infected the hiring process when she "injected . . . attitude into [the] interview" by rhetorically asking Mr. Mullenbach, at the conclusion of the interview, whether he really didn't think that she could do the job of custodian. As the court has discussed, there was sufficient evidence from which the jury could determine that Mr. Mullenbach's discriminatory comment and attitude carried over into the selection process, a process which he was directly involved in, and that the plaintiff's demeanor toward Mr. Mullenbach in the interview process, including the noticeable tension between Mr. Mullenbach and the plaintiff, came about as a result of his discriminatory comment to her.

### B. Motion for a New Trial and Motion for Remittitur

#### 1. Motion for New Trial

The standard for granting a new trial is set forth in Fed. R. Civ. P. 59, in relevant part, as follows:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

Fed. R. Civ. P. 59 (2005). District courts enjoy broad discretion in choosing whether to grant a new trial. Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). In

evaluating a motion for a new trial, a court may balance and weigh the evidence, believe or disbelieve the witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict. White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). "The court may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable." Manus v. American Airlines, Inc., 314 F.3d 968, 973 (8th Cir. 2003) (citing Van Steenburgh v. Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999)). "A motion for new trial is appropriately granted if the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice." Manus v. American Airlines, Inc., 314 F.3d at 973 (citing Lloyd v. Am. Airlines, Inc., 291 F.3d 503, 508-09 (8th Cir. 2002)).

The defendant moves for a new trial in this matter, asserting that the jury's verdict was "against the weight of the evidence, and if allowed to stand, would result in a miscarriage of justice."

In support of its motion for a new trial, the defendant asserts that the court made the following errors during the course of this trial, which according to the defendant, resulted in substantial prejudice to the defendant:

> (1) The court erred in not giving the cautionary jury instruction requested by the [d]efendant that neither offensive conduct by Tracy Mullenbach, nor personal animosity between Mullenbach and [the plaintiff] is the equivalent of gender discrimination.[9]

> (2) [The court erred in allowing] opposing counsel's statement, in redirect examination of [the plaintiff, and over the defendant's objection] by which counsel [for the plaintiff] recanted an alleged conversation with Harvey Parcel to the

---

[9] The court gave the jury instructions that clearly defined discriminatory intent and the business judgment rule. The instructions made it clear that only a finding of illegal sex discrimination could result in a verdict for the plaintiff.

effect that Parcel had no prior experience doing plumbing and electrical, and that Parcel [in fact did not perform such duties during his employment with the district].[10]

(3) [The court erred in allowing the plaintiff's counsel to bring up,] in direct examination of Tracy Mullenbach[,] the 'boiler-room conversation' between Tracy Mullenbach and [the plaintiff], which this [c]ourt had already ruled in limine was not admissible.[11]

(4) [The court erred in] failing to admit [the plaintiff's] pre-incident medical records showing a substantial history of

---

[10] A review of the transcript indicates that counsel for the defendant did not object to counsel for the plaintiff's question concerning what the plaintiff had learned about Mr. Parcel's "background experience in plumbing and electric." Further, counsel for the defendant objected to counsel for the plaintiff's question concerning whether the plaintiff "had learned something since that [told the plaintiff] that [she was] more qualified than Harvey for [the job]," on the basis that it was leading, not that it was irrelevant. The court overruled this objection and when the plaintiff then answered that she had learned that Mr. Parcel had not done any plumbing or electrical during the year that he was a custodian with the Osage Community School District, counsel for the defendant did not lodge any other objection.

[11] The court notes that the record does not support the defendant's claim in this regard. The court clearly directed that the particular conversation at issue need not be relayed, but that Mr. Mullenbach could tell what the event was about. Attorney Beery followed the court's instructions in this regard, and there was no objection made by the defendant. However, counsel for the defendant asked Mr. Mullenbach to "tell the jury what happened" and then asked Mr. Mullenbach what it was that he had said to the plaintiff.

> depression and treatment for depression . . . [and erred in allowing counsel for the plaintiff to state] something to the effect regarding defense counsel's obligation to redact the records, which remarks suggested some impropriety to the prejudice of the [d]efendant."[12]

Alternatively, the defendant moves for a new trial on the issue of emotional distress only.

While the court is unpersuaded that it committed errors at trial that prejudiced the defendant, the court finds that the jury's emotional distress award of $300,000.00 is against the great weight of the evidence and, if allowed to stand, would result in a miscarriage of justice. See Manus, 314 F.3d at 973 (citing Lloyd v. Am. Airlines, Inc., 291 F.3d at 508-09). The defendant moves for a conditional remittitur, specifically requesting that the court reduce the plaintiff's emotional distress award to $30,000.00 and require that the plaintiff accept the reduced damage award or accept a new trial. The court agrees that a conditional remittitur of the emotional distress award is appropriate in this case.

The district court may, in its discretion, reduce the amount of damages awarded by a jury if the amount awarded is found to be grossly excessive. See Kim v. Nash Finch Co., 123 F.3d 1046, 1067 (8th Cir. 1997). "Compensatory 'damages for emotional distress must be supported by competent evidence of "genuine injury."'" Webner v. Titan Distribution, Inc., 267 F.3d 828, 835 (8th Cir. 2001) (citing Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196 (8th Cir. 2001) (quoting Forshee v. Waterloo Indust., Inc., 178 F.3d 527, 531 (8th Cir. 1999)). The plaintiff must "offer specific facts as to the nature of [her] claimed emotional distress and the causal connection to [the defendant's] alleged [discriminatory conduct]." "Although essentially subjective, genuine injury in this

---

[12] The court admitted evidence of the plaintiff's long standing depression. The details of her conversation with her therapist did not have to be disclosed for the defendant to demonstrate the alternative sources for the plaintiff's claimed emotional distress.

respect may be evidenced by one's conduct and observed by others . . . . and an award of damages must be supported by competent evidence concerning the injury." Baker v. John Morrell & Co., 249 F. Supp. 2d 1138, 1192 (N.D. Iowa 2003) (citing Carey v. Piphus, 435 U.S. 247, 264 n. 20 (1978) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)). "While a compensatory damage award may be based solely on [the] plaintiff's own testimony, such testimony should identify and describe the kind of severe emotional distress that would warrant such an award of emotional distress damages." Baker, 249 F. Supp. 2d at 1192 (citing Forshee, 178 F.3d at 531 (citing Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 357-58 (8th Cir. 1997)). The court should review the "size of the compensatory award 'with a keen sense of respect for the latitude given to juries." Rowe v. Hussman Corp., 381 F.3d 775, 783 (8th Cir. 2004) (citing Kucia v. Southeast Arkansas Community Action Corp., 284 F.3d 944, 947 (8th Cir. 2002)). It is within the court's discretion to determine whether an award is excessive. Jenkins v. McLean Hotels, Inc., 859 F.2d 598, 600 (8th Cir. 1988) (citing Morrisey v. Welsh Co., 821 F.2d 1294, 1301 (8th Cir. 1987)). "A verdict may not be considered to be excessive unless there is 'plain injustice' or a 'monstrous' or 'shocking' result." Jenkins, 859 F.2d at 600 (citing Stafford v. Neurological Medicine, Inc., 811 F.2d 470, 475 (8th Cir. 1987).

In support of its motion for conditional remittitur, the defendant asserts that the jury's award of $330,000.00, "including $300,000.00 for emotional distress, is excessive, is not supported by the evidence, and is clearly the result of passion or prejudice." Specifically, the defendant asserts that the emotional distress award in this case is "monstrous" and "clearly shocking to the cons[cience]" because (1) the plaintiff has a long history of pre-existing depression and treatment for depression, caused by a number of symptoms continuing up to the date of the adverse employment action in this case; (2) any emotional distress or suffering on the part of the plaintiff was "not severe, but rather, it was rather vague or ill-defined," and in fact, the plaintiff only testified to "garden variety

emotional distress in that she was 'disappointed,' 'embarrassed,' and 'a little depressed' when she didn't get the custodial job"; (3) there was "no evidence of any severe or debilitating effect of any emotional distress or anguish, or that it [wreaked] havoc on [the plaintiff's] emotional health, or that it had any long-term effect physically or emotionally"; (4) there was "no evidence of any true physical manifestations of severe emotional distress," nor evidence that the plaintiff's health deteriorated as a result of emotional distress; (5) there was "no evidence that [the plaintiff] sought professional, mental-health treatment, nor was there any evidence of any increase in medical doctor visits, treatment, or prescription of anti-depressant medications"; (6) there was "no medical or expert testimony whatsoever" concerning the plaintiff's claim of emotional distress; (7) the plaintiff's claim of discrimination was "based on a single incident" of non-hire, rather than on an "ongoing pattern of harassment, abuse, or egregious conduct by the employer"; (8) the jury's emotional distress award was "very punitive in nature given the fact there was no evidence of any malicious conduct, evil intent, or abusive behavior by [the defendant] which could possibly elicit" such severe emotional distress; (9) the plaintiff did not lose her employment with the district and was never without a job due to the adverse employment action; (10) there was no evidence that the plaintiff's life changed drastically in any way due to the adverse employment action, "nor was there any substantial reduction in her standard of living"; (11) the jury deliberated for less than 2 and ½ hours before returning "this monstrous verdict"; (12) the plaintiff herself, in answer to Interrogatory No. 12, stated that she "was seeking $65,000.00 in emotional distress damages"[13]; (13)

---

[13] The plaintiff objects to her answer to Interrogatory No. 12 being offered for the first time by the defendant in its motion for judgment as a matter of law/motion for new trial. The plaintiff argues that the defendant had access to this information prior to trial, chose not to use it at trial, and should not now be allowed to use it out of context.

(continued…)

while expert testimony is not required to submit the issue of emotional distress to a jury, the Eighth Circuit has made clear that "six-figure emotional distress awards must be supported by substantial evidence of very severe emotional distress," and in this case, there was neither evidence of a severe degree of emotional distress, nor evidence of "egregious or continuing harm experienced as a result of the conduct of the defendant."[14]

In response to the defendant's motion for conditional remittitur, the plaintiff argues that the jury's award was "not excessive and is well in line with the evidence and not the result of passion or prejudice." The plaintiff urges that because "awards for emotional distress are highly subjective, they should be committed to the sound discretion of the jury and should not be disturbed."[15] The plaintiff points out that "nothing was presented to the jury which was designed to impassion or prejudice them except cold hard facts. There were no tearful breakdowns, no gory photographs, no exaggerations of the evidence, nor any demonstration of any kind that were unusual." The plaintiff cites to several Eighth Circuit cases in which comparably large emotional distress awards were upheld.[16]

---

[13](…continued)
Accordingly, the plaintiff asks the court to disregard the defendant's reference to the plaintiff's answer to Interrogatory No. 12. The court did not consider the information set forth in the plaintiff's answer to Interrogatory No. 12 in determining that a conditional remittitur is appropriate in this case.

[14] The defendant cites to Shepard v. Wabelo County, 303 F. Supp. 2d 1004, 1021-24 (S.D. Iowa 2003).

[15] The plaintiff cites to Baker v. John Morrell & Co., 249 F. Supp. 2d 1138, 1192 (N.D. Iowa 2003).

[16] The plaintiff cites to Baker, 249 F. Supp. 2d at 1193; Rowe v. Hussman Corp., 381 F.3d 775, 783 (8th Cir. 2004) (Court upheld District Court's approval of $500,000.00 (continued…)

The plaintiff argues that the emotional distress award in this case "is modest when compared with the reality that the [p]laintiff was forced, because of the [d]efendants' discrimination, to start a new life in a new community, separated from the friends, family, school and social institutions that she and her family had accumulated over the course of half of a century." Moreover, the plaintiff argues that (1) evidence supported a finding by the jury that her long standing depression was aggravated by the discrimination and its aftermath, and such aggravation is properly compensable; (2) the plaintiff's emotional distress was severe, and was not "garden variety" as the defendant contends; (3) the emotional distress and anguish caused by the discrimination "did damage the [p]laintiff's emotional health and . . . aggravated her depression, caused her sleepless nights, crying

---

[16](...continued)

emotional distress award, finding that although the award was substantial, it was not monstrous or shocking given testimony concerning the defendant's conduct); Madison v. IBP, Inc., 257 F.3d 780 (8th Cir. 2001) (overruled on other grounds) (noting that the plaintiff "presented voluminous evidence that she suffered severe emotional distress as a result of the harassment and discrimination" she was subjected to, including "egregious and humiliating conduct which wreaked havoc on her emotional health and caused her great anguish which manifested itself physically."); Eich v. Bd. of Regents for Central Missouri State Univ., 350 F.3d 752 (8th Cir. 2003) (reinstating a $200,000.00 emotional distress award which had been remitted to $10,000.00, noting that the plaintiff's testimony reflected "how demeaning and humiliating" the actions of the defendants were "by reason of the abusive conduct used against" the plaintiff, including evidence of sexual harassment.); Mathieu v. Gopher News Co., 273 F.3d 769 (8th Cir. 2001) (affirming trial court's denial of remittitur, noting that the plaintiff's testimony was that due to the discrimination, he lost his job of thirty four years, was forced to reduce his standard of living, and had become depressed.)

fits, and according [to the plaintiff's husband's testimony] changed [the plaintiff's] personality"; (4) although there was no medical testimony, the plaintiff testified that she was taking antidepressant medication "at the time of trial as she has been for years and that her depression had been aggravated by the discrimination and its aftermath"; (5) although the plaintiff's claim started with a single incident of discrimination, her mental pain and anguish became "more pronounced still as the school manufactured the pretext that the plaintiff was something less than a good employee," and this "ongoing injury continued through the last day of trial as [the plaintiff] watched her former co-employees testify for the defense"; and (6) the jury's award was not "punitive" and the duration of the jury's deliberation "is totally irrelevant," as liability was "obvious" and therefore it is reasonable to infer that consideration of damages likely commenced quickly.

The cases cited by the plaintiff in support of the plaintiff's contention that the emotional distress award was not "excessive" are all clearly distinguishable from the evidence presented in this case, and accordingly do not lend support to the plaintiff's assertion that the emotional distress verdict should stand. The court considers the cases cited by the plaintiff in turn. In Baker v. John Morrell & Co., 249 F. Supp. 2d 1138 (N.D. Iowa 2003), the court reduced the jury's total damage award, including the emotional distress award of $735,000.00, to $300,000.00 in order to comply with the statutory cap on damages set forth in 42 U.S.C. § 1981(b)(3)(D). In finding that the jury's award of $735,000.00 for emotional distress was not excessive, the court made the following comments concerning the evidence at trial:

> [The plaintiff] was subjected to egregious, unremedied harassment. She produced an abundance of evidence that she was subjected to a pervasively hostile work environment . . . and was discriminated against because of her sex . . . . She also . . . was retaliated against for complaining to management and for filing and administrative complaint . . . . This is not the type of case where the plaintiff suffered from 'vague and ill defined' emotional and social problems . . . . [In this case

there was] undisputed, abundant, and corroborated evidence of depression, post-traumatic stress syndrome, anxiety, weight loss, and personality change resulting from the harassment, her constructive discharge, and [the defendant's] retaliation and indifference toward her complaints.

Baker, 249 F. Supp. 2d 1138, 1193 (N.D. Iowa 2003). In Rowe v. Hussman Corp., 381 F.3d 775, 783 (8th Cir. 2004), the Eighth Circuit Court of Appeals upheld the district court's approval of a $500,000.00 emotional distress award. Before concluding that the award, while substantial, was not "monstrous" or "shocking," the court reviewed the testimony supporting the plaintiff's claim for emotional distress, which included that she had been in constant fear of the person harassing her at work, had experienced panic attacks "variously characterized by nausea, headaches, sweating, and hyperventilation," had moved to a different home and obtained a gun card and mace due to fear of her harasser, had been eating lunch and taking coffee breaks in the women's restroom to avoid any contact with her harasser, and that the harassment had adversely affected the plaintiff's relationship with her children. The court also noted that the plaintiff's treating psychologist testified that the plaintiff suffered from an anxiety disorder and that her prognosis was poor.

In Madison v. IBP, Inc., 257 F.3d 780 (8th Cir. 2001) (Overturned on other grounds), the Eighth Circuit Court of Appeals upheld the district court's approval of a $266,750.00 emotional distress award. The evidence at trial in Madison showed that the plaintiff was subjected to a continuing pattern of severe racial and sexual harassment and that supervisors and managers failed to take action in response to the plaintiff's complaints. In finding that the $266,750.00 award was not excessive, the court recounted the evidence in the case supporting the plaintiff's claim for emotional distress damages, including:

[The plaintiff] presented voluminous evidence that she suffered severe emotional distress as a result of the harassment and discrimination she endured . . . [s]he was subjected to egregious and humiliating conduct which wreaked havoc on

19

her emotional health and caused her great anguish which manifested itself physically. The taunting and harassment made her feel humiliated, hurt, and degraded . . . . [The plaintiff] was made so distraught by the behavior of fellow employees and managers that she often left her work station in tears . . . . Her working conditions strained her relationship with her husband and nearly caused the breakup of their marriage . . . as a result of [the plaintiff's] stressful work environment, she lost weight, had trouble sleeping and frequent headaches, and broke out in hives.

In <u>Eich v. Board of Regents for Central Missouri State University</u>, 350 F.3d 752 (8th Cir. 2003), the jury awarded $200,000.00 in emotional distress damages to the plaintiff. The district court ordered that if the plaintiff did not accept the court's remittitur of the emotional distress award to $10,000.00, the defendant's motion for judgment as a matter of law would be granted. The Eighth Circuit Court of Appeals reversed the district court's order, stating "[w]e cannot hold that the jury verdict, as rendered, shocks the judicial conscience." <u>Eich</u>, 350 F.3d at 764. There was a significant amount of evidence presented that the plaintiff was subjected to ongoing severe sexual harassment by more than one individual and that she was also retaliated against by her superiors. The court found that the district court had "failed to analyze the record [appropriately] by giving the [p]laintiff the benefit of all reasonable inferences and resolving all conflicts in the evidence in her favor." <u>Id.</u> Before reaching the conclusion that the district court had erroneously ordered remittitur in this case, the court summarized some of the plaintiff's testimony concerning her emotional distress:

It's very frustrating to know that [the] behavior I was subjected to would be allowed to happen for so long, so many times and nothing be done to correct it . . . . [B]ut when I turned to them for help it was like I was nothing. There is just no way to really describe everything that I have been through, the volume, the intense situations, the rejection of my requests for help . . . . [T]here [are] really no words to describe how completely and totally devastating everything that has

happened to me has been.    Its completely destroyed everything.

In <u>Mathieu v. Gopher News Company</u>, 273 F.3d 769 (8th Cir. 2001), the Eighth Circuit Court of Appeals upheld an emotional distress award of $165,000.00.    The defendant, in <u>Mathieu</u>, argued that the award could not be sustained because the plaintiff presented no expert testimony in support of his claim for emotional distress.    The Eighth Circuit Court of Appeals correctly identified that "the testimony of a medical expert is not a prerequisite for recovery for emotional harm."[17]  <u>Mathieu</u>, 273 F.3d at 783 (citing <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1065 (8th Cir. 1997)).    In upholding the district court's approval of the emotional distress award, the court summarized some of the emotional distress evidence as highlighted in the district court's opinion:

> Mathieu lost his job of thirty four years, was forced to reduce his standard of living, and had become depressed . . . .  the award was not simply for emotional distress, but was made for a combination of factors including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

<u>Id.</u>.

The evidence supporting the plaintiff's claim for emotional distress in this case is not comparable to the evidence supporting the plaintiffs' claims in those cases cited by the plaintiff, as set forth above.    First, this case involves one act of discrimination, the refusal to promote the plaintiff on the basis of her sex.    It does not involve an ongoing pattern or multiple instances of discrimination, sexual harassment, or retaliation.    Second, the testimony concerning the emotional impact of the discrimination on the plaintiff in this case

---

[17] This court follows the Eighth Circuit's holding in this regard.    The decision to apply remittitur to the plaintiff's emotional distress award in this case has nothing to do with the fact that no experts testified on her behalf concerning her claim for emotional distress.

is not comparable to the testimony in the cases cited by the plaintiff. The plaintiff's testimony concerning her emotional distress in this case, consisted in relevant part, as follows:

(1) When the plaintiff found out that Mr. Parcel had been hired instead of her, she was "pretty disappointed."

(2) When people would ask the plaintiff why she didn't get the job, she was embarrassed.

(3) The plaintiff was not happy to leave Osage after having lived there for such a substantial period of time and after having built her and her husband's dream home in 1991. She planned to retire in Osage, and had many friends and relationships there. She was sad to leave Osage and move to Forest City.

(4) It was upsetting to the plaintiff that during the course of this litigation, the school district has characterized her as an employee who is hard to get along with. She had never heard that she was hard to get along with until after she made the complaint of discrimination.

(5) Since the discrimination took place, the plaintiff has noticed an aggravation of her depression.

(6) Since the discrimination took place, the plaintiff has experienced sleeplessness, at the time that her deposition was taken she had recently experienced a crying spell, and she generally feels down on herself.

(7) Since the discrimination took place, the plaintiff has felt hostility from the school and has been upset by the school's position that she cannot get along with others. The plaintiff felt that some of the people who she supposedly could not get along with were her friends.

(8) The plaintiff's husband and son have been affected by the discrimination and the toll that it has taken on her. Her son didn't want to move away from Osage and eventually ended up moving back from Forest City to Osage.

Tom Heimer, the plaintiff's husband, also testified concerning the plaintiff's emotional distress. His testimony, in relevant part, included the following:

(1) Tom and the plaintiff were, up until the time of the discrimination, very active in community sports and in particular baseball. The plaintiff was very involved in helping Tom with youth baseball and would often times help keep score. After the discrimination took place, the plaintiff no longer felt comfortable at the baseball games.

(2) When asked what made Tom and the plaintiff feel uncomfortable with attending baseball games, Tom Heimer testified, "The whole situation with how I feel my wife [the plaintiff] was slighted by the Osage Community School system, how she had dedicated so many years of her life, worked hard many years and I really feel it was not a fair return."

(3) One of the consequences suffered by the plaintiff by moving approximately fifty miles away to Forest City was that by doing so, she and her family pulled themselves out of family gatherings in Osage.

(4) The plaintiff had pre-existing tremors which were well under control and for which she was being treated. After the discrimination took place, the plaintiff "definitely was down on herself," was "down on life in general," and she was "very, very distraught over this deal."

(5) The plaintiff seemed to lose self-respect as a result of the discrimination.

In light of the foregoing, the court determines that the highest amount of a sustainable emotional distress award in this case is $100,000.00. The court notes that

$100,000.00 is not the amount that it would choose if it were the jury in this case, and the court is not merely substituting its opinion as to the correct amount of emotional distress damages for the one rendered by the jury in this case. Put simply, the court finds that the emotional distress award of $300,000.00 is excessive and shocking to the judicial conscience in light of the evidence presented in this case, and in comparison to awards in other employment discrimination cases such as those cited by the plaintiff. When considered on a per diem basis, the jury awarded the plaintiff approximately $357.57 per day.[18] Accordingly, the plaintiff shall either accept the remittitur, reducing her emotional distress award to $100,000.00, or accept a new trial on the issue of the plaintiff's emotional distress.

### C. Motion to Amend the Judgment: Statutory Cap

The defendant alternatively moves the court to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) based on the statutory cap for non-economic damages set forth in 42 U.S.C. § 1981a(b)(3).[19] The court generally has discretion regarding how to

---

[18] The court calculates the time from March 1, 2003, the approximate date of the decision not to hire the plaintiff, until June 22, 2005, the date of the jury's award in this matter. The court notes that this calculation is generous to the plaintiff, as a review of the record indicates that the decision not to hire the plaintiff occurred sometime after March 6, 2003 but before March 13, 2003.

[19] 42 U.S.C. § 1981a(b)(3) states in relevant part:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . shall not exceed . . . (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000 . . .

(continued…)

allocate a damage award. <u>Madison v. IBP, Inc.</u>, 257 F.3d 780, 801 (8th Cir. 2001) (overturned on other grounds). "Appellate courts have approved the allocation of damages between state and federal claims in cases such as this where the standards of liability are the same and the jury has not been asked to distinguish between statutes in assessing damages." <u>Madison</u>, 257 F.3d at 801. "Title VII states that nothing in its provisions 'shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State.'" <u>Id.</u> (quoting 42 U.S.C. § 2000e-7). The defendant has not provided any persuasive reason why the plaintiff should be prevented from receiving her award of compensatory damages under the Iowa Civil Rights Act instead of under federal law. <u>See</u> <u>Id.</u> at 801-02. The court therefore awards the $100,000.00 emotional distress award, as remitted by the court, pursuant to 42 U.S.C. § 1981a(b)(3), and the remainder of the award, including $52,121.81 in attorney fees and costs, $23,388.00 in front pay, $30,000.00 in back pay, and prejudgment interest on the back pay award, and post-judgment interest,[20] under Iowa Code § 216.15.[21]

---

[19](…continued)

Superintendent Williams' affidavit indicates that the Osage Community School District employs approximately 160 full and part-time employees.

[20] The awards of $52,121.81 in attorney fees and costs, $23,388.00 in front pay, $30,000.00 in back pay, pre-judgment interest on the award of back pay, and post-judgment interest, are awarded in a separate order issued by the court concerning the plaintiff's motions for attorney fees and costs and for prospective equitable relief (docket numbers 45, 46, and 56 respectively).

[21] Iowa Code § 216.15a(8) provides for:

(continued…)

Upon the foregoing,

IT IS ORDERED that the defendant's motion for judgment as a matter of law, new trial, and to amend the judgment (docket number 43) is denied in part and granted in part as follows. The defendant's motion for judgment as a matter of law is denied. The defendant's motion for new trial/motion to amend as to remittitur is granted as follows: the plaintiff shall accept the court's remittitur of the emotional distress award to $100,000.00 or a new trial will be had on the issue of emotional distress damages. The plaintiff may accept the court's remittitur by filing a document accepting the remittitur within 30 days of the date of this Order. The defendant's motion for a new trial as to all issues other than emotional distress is denied.

October 26, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[21](...continued)
[p]ayment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages, court costs and reasonable attorney fees.