IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

SANDRA A. HEIMER,

    Plaintiff,

vs.

OSAGE COMMUNITY SCHOOL DISTRICT,

    Defendant.

No. C04-2014

**ORDER**

This matter comes before the court pursuant to the plaintiff's July 6, 2005 motion for attorney fees and July 7, 2005 bill of costs (docket numbers 45 and 46 respectively) and motion for prospective relief or motion for front pay (docket number 56). The court held a hearing on all post-trial motions[1] on September 15, 2005, at which the plaintiff was present and represented by James Beery and the defendant was represented by Darrell Isaacson. The plaintiff's motions for attorney fees (docket numbers 45 and 46) and for prospective equitable relief (docket number 56) are granted as set forth in this Order.

## Attorney Fees

Pursuant to 42 U.S.C. § 2000e-5(k), the court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs. In Title VII cases, the attorney fee award is usually calculated by multiplying the reasonable number of hours spent on the litigation by a reasonable hourly rate. This is known as the "lodestar"

---

[1] The September 15, 2005 hearing also concerned the defendant's motion for new trial, combined motion for judgment as a matter of law and motion to amend the judgment (docket number 43), which motion is considered in a separate Order to follow.

1

method. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Jensen v. Clarke</u>, 94 F.3d 1191,1203 (8th Cir. 1996); <u>Casey v. City of Cabool</u>, 12 F.3d 799, 805 (8th Cir. 1993). In determining the reasonable number of hours spent on the litigation, unnecessary or redundant hours are excluded. The United States Supreme Court, in <u>Hensley v. Eckerhart</u>, set forth 12 factors to help guide courts in determining the lodestar. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Hensley</u>, 461 U.S. at 429-30 & n3.

The plaintiff prevailed on her Title VII discrimination claim, i.e., the plaintiff's gender was a motivating factor in the decision to not hire her for the school custodian position in March of 2003 and the school district would have hired the plaintiff in the absence of gender discrimination. The jury awarded to the plaintiff $30,000.00 in back pay and $300,000.00 in emotional distress damages as a result. The plaintiff seeks a total fees and expenses award of $82,005.65 plus pre and post judgment interest at the rate of 5.33 percent. The plaintiff is represented by James Beery and Michelle Engler. During their representation of the plaintiff, Beery and Engler spent 381.2 hours on the plaintiff's case and claim $78,920.00 in fees. The billing statements reflect that attorney James Beery spent 162.8 hours on this matter at a requested hourly rate of $250.00. Attorney Michelle Engler spent 218.4 hours on this matter at a requested hourly rate of $175.00.

In support of her motion for attorney fees and costs, the plaintiff asserts that the amount she is requesting for attorney fees is a "reasonable" amount because (1) she obtained a substantial verdict in this case; (2) the defendant unreasonably failed to settle

2

this case, and because the defendant "stonewalled" and took "frivolous positions" during settlement negotiations, the defendant "is in no position to complain about the amount of fees their actions required the [p]laintiff to incur"; (3) counsel for the plaintiff made a reasonable investment of time and labor in bringing the plaintiff's claim to trial; (4) the nature of this case required "significant skill" in order to be handled successfully; (5) counsel for the plaintiff did not do other work available to them during the time that they were preparing this case and trying it; (6) counsel "handle some work on an hourly fee basis, for which they are paid fees comparable to those charged in this case";[2] (7) counsel for the plaintiff worked on this case on a contingency fee basis; (8) counsel for the plaintiff have "significant experience and enjoy a good reputation in trial work of all kinds"; (9) the case, being an employment discrimination case which was declined by two attorneys and for which the Civil Rights Commission found no probable cause; and (10) the "fee awards in 'similar' cases around the country are equal to those requested here."

The defendant resists the plaintiff's motion for attorney fees. Specifically, the defendant argues that (1) the plaintiff's attempt to charge the defendant "for two, full time lawyers is excessive and unreasonable" as "[t]his was a fairly simpl[e], straight-forward gender discrimination case which was not complicated to discover, prepare, or try";[3] (2) the hourly rates claimed by counsel for the plaintiff are grossly excessive; (3) the "deposition costs claimed of $1,841.92, which are not itemized by date, etc., are also excessive," and the cost of taking any deposition that was "not used at trial should not be taxed as costs to the [d]efendant"; (4) although state law provides for recovery of

---

[2] The plaintiff asserts that Mr. Beery charges $240.00 per hour for work in federal court, and that Ms. Engler charges $175.00 per hour for work in federal court.

[3] The defendant further notes that "there was only one claim ple[aded] by [the plaintiff," that the plaintiff only took six discovery depositions, that there was no summary judgment briefing, and that trial in this matter only took approximately two and one-half days.

3

prejudgment interest, it is not appropriate for the plaintiff's emotional distress award as "this case was tried in Federal Court and submitted under federal law"; (5) an award of post-judgment interest "would be premature prior to the [c]ourt's ruling on [the defendant's] post-trial motions"; and (6) the plaintiff's application "confirms that many services purportedly billed to [the defendant] are grossly excessive," such as:

  (a) Ms. Engler "allegedly spent 6.7 hours drafting the complaint."

  (b) "From November 4, 2004 through November 14, 2004, [Ms. Engler] allegedly spent 10.5 hours preparing for depositions, and [Mr. Beery] allegedly spent 7.5 hours on November 15th preparing for those same depositions."

  (c) Mr. Beery and Ms. Engler both charged for depositions taking place on November 16, 2004.

  (d) Mr. Beery charged 1.6 hours on May 11, 2005 "with no description of any work that was performed."

  (e) Ms. Engler allegedly spent 4.2 hours between April 28, 2005 through May 10, 2005 "drafting and revising a mediation statement."

  (f) Both Ms. Engler and Mr. Beery charged 8.1 hours for mediation held on May 12, 2005.

  (g) From May 31, 2005 through June 1, 2005, Ms. Engler charged 15.9 hours for research "and preparation of the jury instructions and preparation of the pretrial order, which order was primarily completed by counsel for the defendant."

  (h) Mr. Beery charged 5.9 hours on June 14, 2005 "for reviewing and highlighting all of [the plaintiff's] medical records, the admissibility of which were all objected to by the [p]laintiff at trial purportedly because they were not relevant."

(I) Mr. Beery charged 13.7 hours on June 17 and 18, 2005 "for typing out [the plaintiff's] prepared testimony and proposed 'answers' to cross-examination."

(j) On June 19, 2005, Mr. Beery "charged 8.4 hours for 'Mullenbach cross, talked with Kasel, Gast, Darrell, and work on organization of materials,' while also submitting additional charges (including travel to Cedar Rapids) for that same day."

(k) Ms. Engler allegedly spent 2.4 hours on June 8, 2005 assembling trial materials, "which task appears to be more of a clerical function."

(l) In June, 2005, "there are numerous entries for both [Mr. Beery] and [Ms. Engler] for conferring with one another relative to certain aspects of trial and witness preparation."

(m) Ms. Engler has "apparently charged 7.5 hours for trial attendance" for June 21, 2005, when the court recessed proceedings for the day at approximately 3:15 p.m..

(n) Ms. Engler "purportedly charged 5.6 hours for drafting the attorney fee application and 'recording hours in Excel'" on June 29 and 30, 2005. Ms. Engler also "purportedly spent an additional 12 hours in drafting the same application for attorney fees with no brief, affidavits, or other supporting documents" on July 1, 2, 3, and 5, 2005.

Considering the lodestar factors set forth in Hensley as set forth above, the court finds that an hourly rate of $250.00 for Mr. Beery is not reasonable. No evidence has been submitted indicating that Mr. Beery's clients routinely pay him $250/hour. Based on the court's general knowledge of fees charged and received by attorneys with like experience in the applicable market, the court finds $175.00 to be a reasonable hourly rate

5

for Mr. Beery.[4] Likewise, an hourly rate of $175.00 for Ms. Engler is not reasonable. She has been in practice for a relatively short amount of time in comparison to the hourly fee requested, and there is no affidavit that would otherwise justify this rate. Based on the court's general knowledge of fees charged and received by attorneys with like experience in the applicable market, the court finds $125.00 to be a reasonable hourly rate for Ms. Engler.

The court further finds that the following entries represent time spent completing largely clerical matters for which attorney fees are not properly awarded:

(1) 12/1/04 'records, printed, copy, mail'
(2) 2/8/05 'investigation-travel to Kinko's . . . investigation-used self-serve copier to copy file (mostly discovery) for working copy . . . investigation-travel back to office'
(3) 2/9/05 'investigation-copied, collated and sorted interrogatories'
(4) 6/8/05 'trial preparation-assembled trial notebooks-depositions, pleadings, correspondence, medical records'

These matters represent a total of 5 hours of Ms. Engler's claimed fees. The court also finds that several hours claimed by attorneys Beery and Engler for their attendance at depositions and mediation constitute duplicated hours for which compensation should be made to only one attorney. Specifically, the court declines to award fees for two attorneys to attend depositions. Accordingly, the time for depositions taking place on November 16, 2004, and the mediation taking place on May 12, 2005, will be compensated only at Mr. Beery's hourly rate of $175.00, and the court will deduct 20.5 hours from Ms. Engler's total hours to account for this duplication.[5] See Kline v. City of Kansas City, MO Fire

---

[4] This is not meant to be disparaging. Mr. Beery is very experienced and did a great job for the plaintiff.

[5] Accordingly, the depositions taking place on November 16, 2004, are to be
(continued…)

Dept., 245 F.3d 707, 709 (8th Cir. 2001) (affirming trial court's fee award, including a 15% reduction for "overlawyering").

Moreover, the court finds that a total of 63.5 hours of research between Ms. Engler and Mr. Beery is excessive for litigating this straight forward discrimination case. It presented no novel questions of law or fact and no summary judgment briefing was necessary. Furthermore, the court finds that the number of hours claimed for research by Mr. Beery and Ms. Engler for this matter only further supports the court's evaluation that the requested hourly rates of $250.00 and $175.00 are excessive. Those rates would be reserved for someone with the kind of experience that would not require 63 hours of research. Accordingly, the court reduces the total number of research hours by one-third, for a total of 42.5 hours. Taking into consideration the ratio of research time originally claimed by Mr. Beery and Ms. Engler (41.3 hours and 22.2 hours respectively), the court attributes 30 hours to Mr. Beery, and the remaining 12.5 hours to Ms. Engler, at the court's adjusted hourly rates.

Taking into account the adjustments set forth above, the court finds that the reasonable fees incurred by attorneys Beery and Engler total $49,412.50.

### Bill of Costs

The plaintiff seeks the full amount of her recoverable expenses. She requests reimbursement for the following items in her bill of costs:

| | |
|---|---:|
| Fees of the Clerk | $150.00 |
| Fees for service of summons and subpoena | $119.00 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | $1,841.92 |

---

[5](…continued)
compensated for 15 hours at an hourly rate of $175.00, totaling $2,625.00. The mediation taking place on May 12, 2005 will be compensated for 8.1 hours at an hourly rate of $175.00, totaling 1,417.50.

| | |
|---|---:|
| Fees and disbursements for printing | $92.80 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case (Medicals) | $96.13 |
| Postage to Sheriff for service of summons | $13.65 |
| Postage to Sheriff for service of subpoenas | $1.29 |
| Postage | $4.75 |
| FedEx to Judge Jarvey | $51.85 |
| Office Max | $16.34 |
| Hotel for Trial | $697.92 |
| | **TOTAL: $3,085.65** |

The plaintiff claims a total of $1,841.92 for fees of the court reporter, representing costs of the depositions taken of Robert Meyer, John LaCoste, Jolene Hemann, Stephen Williams, Sandra Heimer, Stephen Nicholson, and Tracy Mullenbach. However, the actual total of the court reporter bills, as submitted to the court, total $1,481.92. The court assumes that the plaintiff mistakenly transposed the "8" and the "4" when recording this cost. Accordingly, the court reduces the total amount compensable for fees of the court reporter to $1,481.92. The court finds that the description of costs for "Office Max" for binders for the plaintiff's trial notebooks is not a properly compensable cost, as it is customarily a part of a litigant's expected overhead costs, and accordingly, the court reduces the Bill of Costs by an additional $16.34. The court finds that the total amount of costs properly compensable to the plaintiff totals $2,709.31. The total allowance for attorney fees and expenses is therefore $52,121.81.

## **Front Pay**

The plaintiff has filed a motion for an award of front pay. The plaintiff asserts that the full-time custodian position for which she was denied would have paid a yearly salary of $24,980.00 plus increased IPERS benefits in the amount of $758.00 per year. The

plaintiff further asserts that as a result of the discrimination in hiring by the defendant, she took a job with Forest City School District where she earns $10,044.00 annually.[6] The plaintiff is fifty-one years of age, and planned to retire at age 65 from the position of custodian with Defendant Osage Community School District. The plaintiff points out that neither party in this case has requested reinstatement as an alternative remedy.[7] The plaintiff seeks a front pay award for a period of ten years, totaling $152,940.00 in projected lost income and $7,580.00 in IPERS benefits.[8]

The defendant resists, arguing that (1) it has not been demonstrated that reinstatement is not an appropriate remedy in this case;[9] (2) the plaintiff did not apply for the same position when it came open the year following and has not attempted to secure comparable full-time employment; (3) the plaintiff has all ready been made whole by the back-pay award and "any additional economic award would [therefore] clearly represent a windfall"; and (4) the duration and amount of the plaintiff's front pay request is unduly

---

[6] The defendant correctly points out that the plaintiff's motion for an award of front pay is completely devoid of any mention of her part-time position with Totem Foods, or the salary that she earns from that position.

[7] The court notes that at the September 15, 2005 hearing on post-trial motions and again in its resistance to the plaintiff's motion for front pay, counsel for the defendant represented that the Osage Community School District was contemplating an offer of employment to the plaintiff for the position of custodian, but that no formal plans had been reached.

[8] The plaintiff cites to Ogden v. Wax Works, 29 F. Supp. 2d 1003 (N.D. Iowa 1998).

[9] In its memorandum in support of its resistance to the plaintiff's motion for front pay, the defendant indicates that while it "does not contend that it is presently feasible to immediately reinstate [the plaintiff] to the high school custodian job, or any comparable position," the defendant "is investigating the possible restructuring of custodial positions so that a full-time custodial position could be made available to [the plaintiff] for the 2006-2007 school year."

9

speculative and grossly excessive considering the plaintiff's failure to mitigate her damages.

Under Title VII and the Iowa Civil Rights Act, the court has the discretion to award equitable remedies, including reinstatement or front pay. "Front pay is an exceptional remedy and should only be awarded in lieu of reinstatement when extraordinary circumstances render reinstatement 'impractical or impossible.'" Mathieu v. Gopher News Co., 273 F.3d 769, 778 (8th Cir. 2001) (quoting Newhouse v. McCormick & Co., Inc., 110 F.3d 635, 641 (8th Cir. 1997) (citing Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 674 (8th Cir. 1995)). "[F]ront pay is intended to assist in making a discriminatorily discharged employee [or an employee not hired on the basis of discrimination] whole." Ogden v. Wax Works, Inc., 29 F. Supp. 2d 1003, 1011 (N.D. Iowa 1998) (citing Cowan v. Strafford R-VI School Dist., 140 F.3d 1153, 1160 (8th Cir. 1998)). "[C]ourts have cautioned that awards of front pay should be tempered to avoid a 'windfall' to the successful plaintiff." Ogden, 29 F. Supp. 2d at 1011 (citing Suggs v. ServiceMaster Educ. Food Management, 72 F.3d 1228, 1234 (6th Cir. 1996)). The Eighth Circuit Court of Appeals has expressed the view that "front pay is not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." Id. at 1012 (citing Kramer v. Logan Cty. Sch. Dist., 157 F.3d 620, 626 (8th Cir. 1998) (internal citations omitted).

In making an award of front pay, the court is "not free to reject or contradict findings by the jury on issues that were properly submitted . . . although it 'retains its discretion to consider all the circumstances in the case when it determines what equitable relief may be appropriate.'" Mathieu, 273 F.3d at 778 (quoting Newhouse, 110 F.3d at 641) (citing Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1101 (8th Cir. 1982)). The plaintiff bears the initial burden of proof in establishing her claim for front pay. Id. To satisfy her initial burden, the plaintiff must provide the "essential data necessary to

calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the plaintiff [expected] to work for the defendant, and the applicable discount rate." Id. (citing McKnight v. General Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992); Fleming v. County of Kane, 898 F.2d 553, 560 (7th Cir. 1990)).

"[T]he fact-intensive nature of the front pay inquiry precludes an all-encompassing list of relevant considerations." Id. Courts have approved the following non-inclusive list of factors for consideration in determining the appropriate award of front pay:

(1) the length of time that the plaintiff was employed with the defendant-employer and the likelihood that the employment would have continued absent the discrimination;

(2) the plaintiff's age;

(3) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment;

(4) the plaintiff-employee's efforts to mitigate damages;

(5) the plaintiff's ability to work and ability to work for the defendant-employer;

(6) the plaintiff's status as an at-will employee; and

(7) the plaintiff's work-life expectancy.

Ogden, 29 F. Supp. 2d at 1014-15 (internal citations omitted).

The first step in calculating the appropriate amount for a front pay award is to determine its proper duration. Id. at 1019. The second step is to calculate the plaintiff's estimated yearly income from the position for which she was rejected less her mitigation damages. Id. at 1020. Insurance and other fringe benefits are appropriately included in a front pay award as part of the compensation package lost to the plaintiff-employee. Id. at 1021 (internal citations omitted). Finally, the court should reduce the front pay award to present value. Id. at 1021.

11

While counsel for the defendant has indicated, at the September 15, 2005 hearing and again in its resistance to the plaintiff's motion for front pay, that the school district may be in the initial stages of considering making an offer of employment to the plaintiff for a custodial position in the future, the court is in no position to find that reinstatement is a plausible remedy in this case. The court would be engaging in gross speculation were it to determine that the school district's vague and tentative considerations concerning an offer of employment to the plaintiff amounted to anything relevant to the court's analysis at this point. The court further declines to engage in similar guesswork concerning whether such an offer of employment, if made, should be seriously considered by the plaintiff. In her motion for front pay, the plaintiff has indicated that such an offer would likely not be accepted and that employment with the district would be impractical, due to her relocation to Forest City, located approximately fifty miles away from Osage. Additionally, it is unrealistic to assume that having the plaintiff resume employment with the very same people who have testified to her work and personality-related misgivings, as well as with the person who made the discriminatory remark to her in the first instance could be successful.

The court therefore turns to a consideration of the factors highlighted in Ogden and as set forth above. The plaintiff was a long time employee of the Osage Community School District, and despite her status as an at-will employee and the testimony from some co-workers and supervisors concerning her alleged work related downfalls, there is absolutely no indication that her employment with the school district was ever in jeopardy. This factor indicates that an award of front pay is appropriate. See Ogden, 29 F. Supp. 2d at 1017. The plaintiff testified that she planned to work in the custodian position for which she was rejected, and plans to remain employed in her two part-time jobs, until the age of 65. The court has no reason to believe otherwise, and this factor weighs in favor of granting an award of front pay. While the plaintiff has clearly made an attempt to mitigate her damages by working two part-time jobs as well as by selling Mary Kay

cosmetics, she has never attempted to secure employment comparable in pay to the custodian position, and has expressed that she has no desire to do so due to her happiness with her current employment. The court finds this factor to be significant, and finds that it supports a reduction in the length of the plaintiff's proposed award.

After considering all of the factors set forth above, and because the court is not convinced that the record provides an adequate basis to support the length of front pay requested by the plaintiff, the court concludes that a front pay award of two years is appropriate in this case. The plaintiff's estimated yearly income had she been employed as a full time custodian with the defendant would have been $24,980.00 in salary and $758.00 in IPERS benefits, totaling $25,738.00 per year. The plaintiff's mitigation damages include her employment with the Forest City Community School District earning $10,044.00 annually, and her employment with Totem Foods earning approximately $4,000.00 annually,[10] totaling $14,044.00 per year. Concerning the issue of discounting the amount of the front pay award for present value, the court finds that given the relatively short duration of the front pay award, any interest that would be earned on the sum will be offset by inflation and future wage increases at the plaintiff's part time employment. See Id. at 1021. Accordingly, the total sum of the plaintiff's front pay award is $23,388.00.[11]

---

[10] The court notes that the plaintiff's testimony concerning her employment with Totem Foods, in regard to the amount of hours she works there weekly or monthly, was anything but concrete. Specifically, the plaintiff testified first that she worked approximately 8 hours a week at Totem Foods, then testified that she worked approximately 20 hours per month there. The plaintiff then agreed that she would expect to earn approximately $4,000.00 per year at Totem Foods. If the plaintiff worked approximately 20 hours per month at $8.50 per hour, it would total $2040.00. The court chooses to calculate her earnings for her position with Totem Foods at $4,000.00 per year. The court does not consider any income that the plaintiff makes as a result of her Mary Kay cosmetic sales.

[11] The court calculates the difference between the annual custodian salary of
(continued…)

**Pre-Judgment Interest**

The plaintiff seeks pre-judgment interest at the rate of 5.33% pursuant to Iowa Code § 668.13, set by the court to the date of the filing of this action. The court has the discretion to award pre-judgment interest in order to make the plaintiff whole. Smith v. World Insurance Company, 38 F.3d 1456, 1467 (8th Cir. 1994). The court finds that pre-judgment interest is appropriate in this case on the back-pay award only, because the court believes that the plaintiff has been fully compensated for losses she sustained by way of the back-pay award, the generous emotional distress award, and award of front pay without any reduction for a discount factor. Accordingly, the back-pay award of $30,000.00 shall accrue interest beginning on the date that this action was filed,[12] continuing through the date of entry of the judgment.[13]

---

[11] (…continued) $25,738.00 for two years, totaling $51,476.00, and the plaintiff's annual mitigation damages of $14,044.00 for two years, totaling $28,088.00, resulting in a total difference of $23,388.00 for the two year front pay award period.

[12] The Complaint was filed on February 20, 2004 (docket number 1).

[13] Judgment in this matter was entered June 23, 2005 (docket number 39).

Upon the foregoing,

IT IS ORDERED that the plaintiff's motion for attorney fees and costs (docket numbers 45 and 46) are granted as follows: the plaintiff is awarded attorney fees in the amount of $49,412.50, and costs in the amount of $2,709.31, for a total fee award of $52,121.81. The plaintiff's motion for prospective equitable relief (docket number 56) is granted as follows: the plaintiff is awarded front pay in the amount of $23,388.00. Pre-judgment interest shall accrue on the plaintiff's back-pay award of $30,000.00, beginning on February 24, 2004 and continuing through June 23, 2005. The clerk shall enter judgment for the plaintiff for post-judgment interest according to law. The clerk shall enter an amended judgment in accordance with this Order.

October 26, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT